Citation Nr: 1829328 
Decision Date: 05/31/18 Archive Date: 06/12/18

DOCKET NO. 12-33 724A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for bilateral pes planus. 

2. Entitlement to service connection for bilateral hearing loss.

3. Entitlement to service connection for tinnitus.

4. Entitlement to service connection for cervical strain with mild degenerative disc disease.

5. Entitlement to service connection for lumbar strain with degenerative disc disease and scoliosis.

6. Entitlement to service connection for bilateral shoulder strain.

7. Entitlement to an initial rating in excess of 10 percent for left hallux valgus, status post left bunionectomy, with first metatarsal osteotomy.

8. Entitlement to an initial rating in excess of 10 percent for right hallux valgus, status post simple bunionectomy.

9. Entitlement to a total disability rating based on individual unemployability (TDIU).

10. Entitlement to special monthly compensation based on housebound status or the need for regular aid and attendance of another person.


REPRESENTATION

Appellant represented by: Charles D. Romo, Attorney


ATTORNEY FOR THE BOARD

R. Behlen, Associate Counsel


INTRODUCTION

The appellant served on active duty in the Navy from June 1986 to June 1990.

This matter comes before the Board of Veterans' Appeals (Board) from a January 2012 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. This matter was remanded by the Board in January 2017. A Supplemental Statement of the Case (SSOC) was issued in November 2017.

The Board observes that, although a substantive appeal was received in July 2015 with respect to the denial of service connection for fibromyalgia (also claimed as muscular pain), migraine headaches, and gout, and the denial of an initial compensable rating for left testalgia, the appellant has requested a hearing before a Veterans Law Judge with respect to such issues. As he has not yet been afforded this hearing, the issues are not ready for adjudication.

The issues of entitlement to service connection for a cervical spine disability, a lumbar spine disability, a bilateral shoulder disability, pes planus, bilateral hearing loss, tinnitus, TDIU, and special monthly compensation are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The appellant's left hallux valgus, status post left bunionectomy, with first metatarsal osteotomy, is manifested by pain and tenderness, producing limitations in standing and walking.

2. The appellant's right hallux valgus, status post simple bunionectomy, is manifested by pain and tenderness, producing limitations in standing and walking.


CONCLUSIONS OF LAW

1. The criteria for entitlement to an initial rating in excess of 10 percent for left hallux valgus, status post left bunionectomy, with first metatarsal osteotomy, have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 4.71, Diagnostic Code 5280-5284 (2017).

2. The criteria for entitlement to an initial rating in excess of 10 percent for right hallux valgus, status post simple bunionectomy, have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 4.71a, Diagnostic Code 5280-5284 (2017).




REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

Neither the appellant nor his representative has raised any issues with the duty to notify or duty to assist with respect to the issues adjudicated below. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

Applicable Law

Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. 38 U.S.C. § 1155; 38 C.F.R. Part 4. Separate diagnostic codes identify the various disabilities. Where there is a question as to which of two evaluations should be applied, the higher evaluation will be assigned if that disability picture more nearly approximates the criteria required for that rating. 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability is resolved in favor of the veteran. 38 C.F.R. § 4.3.

In considering the severity of a disability, it is essential to trace the medical history of the veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41. Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991).

Where a claimant appeals the initial rating assigned following an award of service connection, evidence contemporaneous with the claim for service connection and with the rating decision granting service connection would be most probative of the degree of disability existing at the time that the initial rating was assigned and should be the evidence "used to decide whether an [initial] rating on appeal was erroneous. . . ." Fenderson v. West, 12 Vet. App. 119, 126 (1999). If later evidence obtained during the appeal period indicates that the degree of disability increased or decreased following the assignment of the initial rating, "staged" ratings may be assigned for separate periods of time based on facts found. Id.

The standard of proof to be applied in decisions on claims for VA benefits is set forth in 38 U.S.C. § 5107(b). Under that provision, VA shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107(b); see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990). "It is in recognition of our debt to our veterans that society has [determined that,] [b]y tradition and by statute, the benefit of the doubt belongs to the veteran." See Gilbert, 1 Vet. App. at 54.

Background

The appellant's service treatment records show that he was noted to have bilateral pes planus on service enlistment in February 1986. In-service treatment records document subsequent complaints of chronic bilateral foot pain. In July 1988 and January 1989, he underwent left and right bunionectomies, respectively. He was thereafter placed on light duty until July 1989, after which he was returned to full duty. At his June 1990 discharge examination, the appellant reported being unable to walk or stand for long periods. The examiner noted unspecified residuals of the bilateral foot surgery. 

The post-service record on appeal includes a July 2010 podiatry note stating that the appellant complained of bilateral bunion pain. He reported severe pain since bunionectomies in the 1980's. He also reported radiating pain down the right leg and severe bilateral knee pain. He reported a history of low back pain for many years. The pain was so bad today that he required a wheelchair to make it to the examination room. Examination revealed extreme foot and knee pain of unknown origin. Preliminary examination revealed no obvious signs, trauma, or pathology. There were no obvious signs of injury or trauma to the feet or knees during examination. The podiatrist assured the appellant that he did not have any serious signs of a big problem and stated that she was not sure at the moment why the appellant was in so much pain. He was unable to tolerate touching of the feet. The patient was guarded while the podiatrist attempted range of motion testing. The motion she was able to obtain from the appellant was smooth without crepitus. The appellant still had a mild hallux valgus position with minimal first metatarsal head prominence. Pes planus was not observed.

July 2010 imaging studies of the left foot revealed left hallux valgus, prior bunionectomy, and small nonspecific soft tissue calcification medial to bunionectomy defect. July 2010 imaging studies of the right foot revealed right hallux valgus, prior bunionectomy, os trigonum. 

The appellant was afforded a VA examination in February 2011. The claims file was reviewed. With respect to status post foot bunionectomies, the appellant reported continuing pain, concentrated in the big toes. The course since onset was progressively worse. The appellant endorsed heat, redness, weakness, pain, swelling, stiffness, fatigability, and lack of endurance bilaterally. Flare-ups were denied. He reported functional limitations including an inability to stand for more than a few minutes or walk more than a few yards. Assistive devices included corrective shoes, orthotic inserts, and cane for flat feet and big toe pain. Examination of the bilateral feet revealed painful motion and tenderness. Examination was negative for swelling, instability, weakness, or abnormal weight-bearing. Angulation was 30 degrees with passive dorsiflexion at first MTP joint to 20 degrees. There was no stiffness of joint. 

In addition, the examiner indicated that there was no skin or vascular foot abnormality. There was no malunion or nonunion of the tarsal or metatarsal bones. Achilles alignment was normal in both nonweight-bearing and weight-bearing. There was no forefoot or midfoot malalignment. There was no pronation. No arch was present on weight-bearing or nonweight-bearing. Pain on manipulation was present. There was no varus/valgus angulation of the os calcis in relationship to the long axis of the tibia/fibula. Left heel valgus was 0 degrees. Weight bearing line was over the great toe. There was no muscle atrophy. There was slight first metatarsal head prominence. There was an exaggerated antalgic gait. The examiner diagnosed the appellant as having bilateral pes planus and bilateral hallux valgus, status post simple right bunionectomy and left bunionectomy with first metatarsal osteotomy. A 3 mm by 1 mm nonspecific soft tissue calcification medial to bunionectomy defect was now possibly related to the prior surgery or other nonspecific soft tissue calcification on the left foot. There was a significant impact on occupational activities, including decreased mobility and pain, which resulted in increased absenteeism and more difficulty performing duties. There were severe effects on chores, exercise, recreation, traveling, bathing, toileting, and driving. He was prevented from shopping or engaging in sports. There were no effects on feeding. There were moderate effects on dressing and grooming.

Based upon a review of the medical records, medical literature, and clinical experience, the examiner concluded that majority of the appellant's foot problems were related to his bilateral hallux valgus. Such persisted following surgery and has worsened over time. There appeared to be symptom magnification at times during examination; however, the examiner opined that the appellant appeared to experience problems bilaterally. With respect to occupational impairment, the examiner opined that the appellant's bilateral hallux valgus should not preclude light duty or sedentary employment. Strenuous physical employment was limited, due to significant foot pain and an inability to stand or walk for more than several minutes at a time.

The appellant was afforded a VA examination in August 2013. The claims file was reviewed. He was diagnosed with hallux valgus. The appellant reported that his in-service bunionectomies were to also straighten his bilateral great toes. However, this was unsuccessful. He has continued to experience bilateral foot pain, particularly in the region of the bilateral great toe MTP joints. He endorsed occasional flares of gout pain to the toes and bilateral feet. He also reported swelling and throbbing pain, with limited joint movement. The appellant uses ice to reduce swelling and takes daily allopurinol but no other medication for gout flares. Examination revealed mild to moderate symptoms of hallux valgus bilaterally. There was no malunion or nonunion of tarsal or metatarsal bones. There were no scars that were painful, unstable, with the total area greater than 39 square cm (6 square inches). There was no objective evidence of tenderness to palpation of either foot. There was obvious hallux valgus of the bilateral great toes. Bilateral great toes were mobile and without evidence of crepitus, although there was mild guarding with passive range of motion to bilateral great toes. The appellant made regular use of wheelchair, cane, and walker. The cane was used around the house. When the pain is more severe, he uses a walker but must switch back to the cane if the walker does not fit in narrow places in the home. He uses a wheelchair when he goes out if he has pain in his neck and back. He uses bilateral shoe inserts. Functioning was not so diminished that amputation with prosthesis would equally serve the appellant. The appellant reported that he had been unable to work since December 2008. Pain had always been present, but it became severe enough to prevent him from driving in 2008. 

The appellant was afforded a VA examination in October 2017. The claims file was reviewed. He was diagnosed with bilateral hallux valgus. The appellant reported that bilateral foot pain began in service and that he underwent bunionectomy surgery while on active duty. He has not had repeat surgery. The appellant reported burning pain in the feet and it was noted that he had a history of nonservice-connected diabetes mellitus and fibromyalgia. The appellant reported that he had not been ambulatory since 2009. Pes planus was not observed. He reported that he had just gotten over a gout flare in the feet. Flare-ups were endorsed in the form of nonservice-connected gout. He did not report any functional loss or impairment. The examiner stated that the symptoms of hallux valgus were mild or moderate bilaterally. Pain was present bilaterally on examination; however, such did not cause additional limitation because the pain was burning and not related to his service-connected hallux valgus. There was no functional loss of either lower extremity attributable to his service-connected disorders. Likewise there was no pain, weakness, fatigability, or incoordination which significantly limited functional ability, or any other functional loss, during flare-ups or following repeated use over a period of time. 

Scars were present; however, the examiner was unable to visualize or measure such. The appellant made constant use of a wheelchair because he had been non-ambulatory since 2009 due to a combination of disorders, including gout and fibromyalgia. Functioning was not so diminished that amputation with prosthesis would equally serve the appellant. Imaging studies were negative for arthritis. July 2010 imaging studies revealed right hallux valgus, prior bunionectomy, os trigonum. There was irregularity and flattening along distal medial first metatarsal, compatible with history in chart of bunionectomy with respect to the right foot. Os trigonum was noted. There was no impact on the appellant's ability to perform any type of occupational task. No etiological opinion was rendered with respect to pes planus because examination was negative for such. Further, Dr. A. did not observe pes planus in 2010. The examiner also noted that the appellant was found to not have pes planus in 2014 by a podiatrist. 

Rating Criteria

Disabilities of the feet are rated under the provisions of 38 C.F.R. § 4.71a, Diagnostic Codes (DC) 5276 to 5284 (2011). The RO has rated the appellant's right and left hallux valgus disabilities under DC 5280-5284. 

DC 5280 allows for a maximum 10 percent rating for hallux valgus, unilateral, operated with resection of metatarsal head, or for severe hallux valgus, if equivalent to amputation of great toe. 38 C.F.R. § 4.73, DC 5280.

DC 5284 states that a moderate foot injury warrants a 10 percent rating, a moderately severe foot injury warrants a 20 percent rating, and a severe foot injury warrants a maximum 30 percent rating. However, a note states that actual loss of use of the foot warrants a 40 percent rating. 38 C.F.R. § 4.73, DC 5284.

The words "mild," "moderate," and "severe" are not defined in the VA Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." See 38 C.F.R. § 4.6. 

Analysis

Upon weighing the evidence, the Board finds that an initial rating in excess of 10 percent is not warranted for any portion of the period on appeal for either left or right foot hallux valgus. As set forth above, the appellant is already in receipt of the maximum schedular rating available for hallux valgus. 38 C.F.R. § 4.71a, Diagnostic Code 5280. 

When evaluating disabilities of the musculoskeletal system based on loss of range of motion, 38 C.F.R. § 4.40 allows for consideration of functional loss due to pain and weakness causing additional disability beyond that reflected on range of motion measurements. DeLuca v. Brown, 8 Vet. App. 202, 206-07 (1995). Further, 38 C.F.R. § 4.45 provides that consideration also be given to weakened movement, excess fatigability, and incoordination. Because the appellant is already in receipt of the maximum schedular rating available, consideration of 38 C.F.R. § 4.40 and § 4.45, and the accompanying case law, is not required. Johnston v. Brown, 10 Vet. App. 80 (1997). 

With respect to DC 5284, the Board notes that such provision is applicable for a disability resulting from actual injury to the foot. See Yancy v. McDonald, 27 Vet. App. 484, 492-93 (2016) (holding that application of DC 5284 is limited to disabilities resulting from actual injuries to the foot, but that unlisted conditions may be rated by analogy to injury of the foot under DC 5284); 38 C.F.R. § 4.20 (providing that unlisted conditions may be rated by analogy under a closely related disease or injury). "The plain meaning of the word 'injury' limits the application of DC 5284 to disabilities resulting from actual injuries to the foot, as opposed to disabilities caused by, for example, degenerative conditions." Yancy, 27 Vet. App. at 491. The appellant's bilateral hallux valgus is a disease rather than an injury, as service connection was granted based on the diagnosis of this disorder during service, rather than as due to an injury in service. Further, hallux valgus has its own diagnostic code under 38 C.F.R. § 4.73. Rating by analogy under DC 5284 is therefore not appropriate. 

The Board notes that the appellant has had previous diagnoses of fibromyalgia, gout, and pes planus which have been noted to cause pain and other symptoms of the feet. The Board is unable to consider the manifestations of these disabilities in rating the appellant's service-connected hallux valgus. Rather, only the symptoms attributable to the service-connected left hallux valgus, status post left bunionectomy, with first metatarsal osteotomy, and right hallux valgus, status post simple bunionectomy, may be considered in the assignment of initial ratings for such. See 38 C.F.R. § 4.14. 

The Board finds that the preponderance of the evidence indicates that the appellant's foot symptoms attributable to his service-connected hallux valgus and his symptoms attributable to nonservice-connected disabilities can be distinguished. 

The July 2010 podiatry note states that examination revealed extreme foot and knee pain of unknown origin. Preliminary examination revealed no obvious signs, trauma, or pathology. There were no obvious signs of injury or trauma to the feet or knees during this most minimal examination. The podiatrist assured the appellant that he did not have any serious cardinal signs of a big problem and stated that she was not sure at the moment why the appellant was in so much pain. The podiatrist elicited smooth motion without crepitus, and noted mild hallux valgus position with minimal first metatarsal head prominence.

Although the February 2011 VA examiner opined that the majority of the appellant's foot problems were related to his bilateral hallux valgus, it was also noted that there appeared to be symptom magnification at times. Hallux valgus was primarily manifested by painful motion and tenderness. The functional limitations included an inability to stand for more than a few minutes or walk more than a few yards. Assistive devices included corrective shoes, orthotic inserts, and cane. However, hallux valgus should not preclude even light duty.

During the August 2013 VA examination, it was noted that the appellant experienced occasional flares of gout pain to the toes and bilateral feet. The examiner stated that examination revealed mild to moderate symptoms of hallux valgus bilaterally. 

The October 2017 VA examiner noted that extreme foot and knee pain of unknown origin was present. With respect to the appellant's reports of burning pain in the feet, it was noted that he had a history of nonservice-connected diabetes mellitus and fibromyalgia. The appellant himself reported that he had just gotten over a gout flare in the feet. He did not report any functional loss or impairment. Although pain was present bilaterally on examination, such did not cause additional limitation because the pain was burning and not related to his service-connected hallux valgus. There was no functional loss of either lower extremity attributable to his service-connected disorders. The Board finds the examiner's opinions regarding the etiology of the appellant's foot symptomatology highly probative because it was based on a clinical examination of the appellant and consideration of the relevant medical history. The examiner stated that the symptoms attributable to hallux valgus were mild or moderate bilaterally. 

Although the appellant has competently reported flare-ups of foot pain, see August 2013 and October 2017 VA examination reports, such pain was attributed to nonservice-connected gout. It is not contended otherwise. Flare-ups were denied during the February 2011 examination.

The August 2013 and October 2017 VA examiners noted that the appellant experienced mild to moderate symptoms of hallux valgus. The Board observes that use of terminology such as "severe" by VA examiners and others may be considered, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2, 4.6.

However, the Board has reviewed the clinical evidence of record and the lay contentions and finds that the appellant's bilateral hallux valgus disabilities are manifested by no more than moderate symptomatology contemplated by the currently-assigned maximum schedular ratings. Although the appellant has competently reported severe pain, which has precluded him from driving since 2008 and caused him not to be ambulatory since 2009, the Board finds the October 2017 VA examination report is highly probative as to the severity of his foot problems attributable to hallux valgus. 

The February 2011 VA examiner was the only examiner to state that the majority of the appellant's foot problems were related to his bilateral hallux valgus. However, the examiner noted that hallux valgus was primarily manifested by painful motion and tenderness, but should not preclude even light duty, despite functional limitations. 

The Board notes that the etiological opinion offered in the October 2017 VA examination report with respect to the issue of service connection for pes planus relied on an inaccurate factual premise as to the presence of a current disability of flat feet (pes planus) during the period on appeal. However, this does not lessen the probative value of such examination report as to the symptoms attributable to the appellant's hallux valgus, or the severity of such symptoms. The addendum opinion ordered below is because a 2014 clinical observation of flat feet was not considered as to whether the appellant had a current disability during the period on appeal. It is possible for a veteran to have a current disability causally related to his or her active service at one point during a period on appeal, but for such disability to resolve. See e.g. McClain v. Nicholson, 21 Vet. App. 319, 321 (2007) (the requirement for service connection that a current disability be present is satisfied when the claimant has a disability at the time a claim for VA disability compensation is filed, or at any time during the pendency of the claim). Thus, the Board is not implicitly questioning the accuracy of the October 2017 VA examination report with regard to whether pes planus was present during such examination.

As the evidence preponderates against the claim, the benefit of the doubt doctrine is not for application. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).


ORDER

Entitlement to an initial rating in excess of 10 percent for left hallux valgus, status post left bunionectomy, with first metatarsal osteotomy, is denied.

Entitlement to an initial rating in excess of 10 percent for right hallux valgus, status post simple bunionectomy, is denied.


REMAND

Cervical Spine, Lumbar Spine, and Bilateral Shoulder Disabilities

The January 2017 Board remand instructed the VA examiner to address "the Veteran's lay statements of a continuity of joint and spine pain since the falls and other trauma and whether the lay statements of continuity of symptoms are medically consistent with the injuries but without regard to the absence of treatment for many years after service." However, the October 2017 examiner based the negative etiological opinions regarding lumbar spine and bilateral shoulder disabilities on absence of continuity of treatment and did not discuss the appellant's competent reports of continuity of symptomatology.

With respect to the cervical spine claim, although the October 2017 examiner stated that the appellant did not have a current disability and never had been diagnosed with such, the February 2011 VA examiner diagnosed the appellant with cervical strain and degenerative disc disease, based upon July 2010 imaging studies. Such diagnoses were made during the period on appeal. It is unclear whether such 2011 diagnoses were made in error.

Compliance with remand directives by the originating agency is not optional or discretionary. The Board errs as a matter of law when it fails to ensure remand compliance. See Stegall v. West, 11 Vet. App. 268 (1998). See also Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (holding that when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate).

Further, it is unclear whether the appellant's reported cervical spine, lumbar spine, and bilateral shoulder symptoms are attributable to a disorder such as fibromyalgia or gout, rather than specific neck, back, or shoulder disabilities. The Board also notes that the appellant himself described such pain as part and parcel of his chronic body-wide pain, gout flares, and headaches. See October 2017 VA examination report.

Thus, an addendum opinion should be obtained which discusses the appellant's competent reports of continuity of symptomatology, addresses the cervical spine diagnoses made during the period on appeal, and discusses the nature and etiology of the appellant's reported neck, back, and shoulder symptoms.

Pes Planus

Pursuant to the Board's remand instructions, the appellant underwent a VA foot examination in October 2017. The examiner indicated that examination was negative for pes planus. The VA examiner further noted that pes planus was not observed in 2010, and that a podiatrist found that the appellant did not have pes planus in 2014. However, a review of the claims file reveals that an April 2014 VA pain consultation clinical note recorded an impression of flat feet (pes planus) and hallux valgus bilaterally, as feet were observed to be "very flat." In addition, a February 2011 VA examination contains a diagnosis of pes planus. 

Moreover, the record shows that in July 1988, a medical board concluded that the appellant's pre-service pes planus was aggravated during service. Pursuant to 38 C.F.R. § 3.1, a service department finding that an injury or disease occurred in the line of duty is binding on VA unless patently inconsistent with the requirements of VA law. In the line of duty means an injury or disease incurred or aggravated during active service. Id. Thus, clarification is needed as to whether the appellant currently has pes planus, a necessary prerequisite to an award of service connection. 

The requirement for service connection that a current disability be present is satisfied when the claimant has a disability at the time a claim for VA disability compensation is filed, or at any time during the pendency of the claim. See McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). Thus, the October 2017 examiner relied on an inaccurate factual premise regarding the existence of flat feet during the period on appeal and clarification is necessary. 


Hearing Loss and Tinnitus

Although an audiological examination was ordered in the January 2017 remand, the October 2017 examiner determined that such examination was not necessary. Thus, the appellant was not afforded the examination ordered by the Board. The clinician who offered the opinion failed to address the appellant's contentions of service connection. Moreover, the examination was ordered as the prior October 2011 VA examiner was unable to conduct a hearing acuity test because of non-organic components and inconsistent data. Compliance with remand directives by the originating agency is not optional or discretionary. The Board errs as a matter of law when it fails to ensure remand compliance. See Stegall, 11 Vet. App. at 268.

TDIU and Special Monthly Compensation

As resolution of the claims of entitlement to service connection for fibromyalgia, migraine headaches, and gout, and the claim of entitlement to an initial compensable rating for left testalgia may have an impact on the appellant's claims of entitlement to TDIU and special monthly compensation, the issues are inextricably intertwined. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (holding that where a decision on one issue would have a "significant impact" upon another, and that impact in turn could render any appellate review meaningless and a waste of judicial resources, the two claims are inextricably intertwined).

Accordingly, the case is REMANDED for the following action:

1. Provide access to the appellant's claims file to the VA clinician who conducted the October 2017 examination of the appellant's joints, or other appropriate clinician, if the October 2017 examiner is unavailable. The examiner should address the following: 

(a) With respect to the cervical spine, the examiner should specifically address the February 2011 diagnoses of cervical strain and degenerative disc disease, based upon July 2010 imaging studies, and explain whether such diagnoses were made in error. As these diagnoses were rendered during the period on appeal, they would suffice to show a current disability during such period, regardless of whether the appellant had a current cervical spine disability at the time of the October 2017 examination.

(b) The examiner should then opine as to whether it is at least as likely as not (50 percent or greater probability) that:

(i) any cervical spine disabilities diagnosed during the period on appeal, including cervical strain and degenerative disc disease diagnosed in February 2011 based upon July 2010 imaging studies (should the examiner find that such diagnoses were not made in error); 

(ii) any lumbar spine disabilities diagnosed during the period on appeal, including degenerative disc disease; and

(iii) any bilateral shoulder disabilities diagnosed during the period on appeal, including bilateral shoulder impingement syndrome, 

were caused by falls from a shipboard ladder, falls from a bunk, exertion from lifting, or the August 1987 automobile accident during active service. The appellant's lay statements of continuity of symptomatology must be specifically addressed.

The examiner must consider the clinical evaluations at the time of the falls, the results of the discharge physical examination, post-service treatment and examination records including records obtained from SSA, and the appellant's lay statements of a continuity of joint and spine pain since the falls and other trauma and whether the lay statements of continuity of symptoms are medically consistent with the injuries but without regard to the absence of treatment for many years after service.

If the clinician determines that an examination is necessary, one should be scheduled. 

2. Provide access to the appellant's claims file to the VA clinician who conducted the October 2017 examination of the appellant's feet, or other appropriate clinician, if the October 2017 examiner is unavailable. The examiner should address the following: 

Does the appellant exhibit pes planus or has he ever exhibited pes planus at any time during the period on appeal (i.e. since the date of receipt of his claim in August 2010). In providing the requested opinion, the examiner should comment on the February 2011 VA examination and the April 2014 VA pain consultation clinical note, both of which note diagnoses of flat feet (pes planus).

If the clinician identifies a current pes planus disability, he or she should indicate whether such disability is causally related to the aggravation of the appellant's pre-service pes planus identified in the July 1988 Navy medical board. 

If the clinician determines that an examination is necessary, one should be scheduled. 

3. Schedule the appellant for a VA audiometric examination. Provide the examiner with access to the electronic claims file. Request that the examiner review the file, including service treatment records, the appellant's lay statements, the October 2011 VA examination report, and the October 2017 medical opinion. 

The appellant's primary military occupational specialty (MOS) was intermediate radio operator. Such MOS has a moderate probability of regular exposure to hazardous noise. Thus, exposure to acoustic trauma has been conceded. See e.g. November 2017 SSOC.

The examiner should provide opinions as to whether it is at least as likely as not that any hearing loss and tinnitus identified on examination are causally related to either noise exposure in service or are residuals of the appellant's in-service falls.

4. After completing the above action, and any other development as may be indicated by any response received as a consequence of the actions taken in the paragraphs above, readjudicate the claims. 

If the benefits sought on appeal remain denied, a Supplemental Statement of the Case must be provided to the appellant and his attorney. After an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).




______________________________________________
K. Conner
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs